UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
CARMEL REDDINGTON,

                 Plaintiff,

   -against-

STATEN ISLAND UNIVERSITY
HOSPITAL and NORTH SHORE-LONG
ISLAND JEWISH HEALTH SYSTEM,
INC.,

                Defendants.
-------------------------------------------------x

<u>MEMORANDUM AND ORDER</u>
04-CV-1104 (ILG)

GLASSER, United States District Judge:

     Plaintiff Carmel Reddington ("plaintiff") brings this action against her former employer, Staten Island University Hospital ("SIUH"), and North Shore-Long Island Jewish Health System, Inc. ("Health System"), the entity that allegedly owned and/or controlled SIUH. She asserts causes of action for age discrimination and retaliatory discharge for whistleblowing activities. Pending before the Court is defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for attorney's fees pursuant to N.Y. Labor Law § 740.

## **<u>FACTS</u>**

     The following facts are accepted as true for purposes of this motion.[1] Plaintiff was an employee of defendant SIUH from December 19, 1994 to October 30, 2002. Am. Compl. ¶ 3. When she began working for SIUH in 1994, she was a Coordinator of

---

   [1] For purposes of this motion, the Court recounts the facts as alleged in plaintiff's amended complaint unless otherwise noted. While plaintiff omitted certain claims in her amended complaint that she asserted in her original complaint, the factual allegations contained in the complaints are essentially identical.

Volunteer Services. In March of 1998, plaintiff was promoted to Manager of Volunteer Services. Id. ¶ 15. In February 2002, Joseph Conte ("Joseph Conte"), Vice President of SIUH, held a Total Quality Leadership Team meeting at which he discussed his plans to travel to Italy to market a radiation therapy treatment to persons with cancer in that country. After the meeting, plaintiff indicated to Joseph Conte that she spoke Italian and offered him her assistance. Id. ¶ 17.

On May 16, 2002, Joseph Conte asked plaintiff to meet with him and Dr. Gilbert Lederman ("Lederman"), the Director of Radiation Oncology at SIUH, the next morning. At the meeting on May 17, Joseph Conte and Lederman told plaintiff that twelve families from Italy were at SIUH and asked her if she would act as an interpreter for them. Plaintiff agreed to do so in addition to performing her tasks as Manager of Volunteer Services until the hospital hired full-time employees for the interpreter position. Id. ¶ 20.

Plaintiff then accompanied Lederman to meet the Italian families. Upon introducing herself, plaintiff "was besieged with complaints of inadequate and non-treatment, abandonment, and failure to provide a translator." Id. ¶ 21. Plaintiff reported these complaints to Lederman, who assured her that the concerns would be addressed. Plaintiff continued to receive complaints from the Italian families, which she reported to Joseph Conte later that week. Id. ¶ 23. Joseph Conte asked plaintiff to meet with him the next morning to resolve the complaints, but the next day plaintiff was unable to find him. Instead, on May 20, plaintiff reported the families' complaints to Lederman who responded that Joseph Conte was solely responsible for the patients' treatment. Id. ¶¶ 25, 26.

2

On May 21, Lederman asked plaintiff to notify the Italian families that he planned to hold a meeting. At that meeting, plaintiff acted as an interpreter for Lederman and two other individuals, Alfred L. Glover ("Glover"), the Chief Operating Officer of SIUH, and Ralph J. Lamberti ("Lamberti"), the Executive Senior Vice President of SIUH. The Italian patients and their families expressed their concerns, in particular the need for additional interpreters, and plaintiff relayed that information to Lederman, Glover and Lamberti. Id. ¶¶ 17-30.[2]

In mid-June 2002, plaintiff acted as an interpreter at a meeting with Joseph Conte, Lederman, Andrew Passeri, Ph.D. ("Passeri")[3] and two others, Salvatore Conte and Dr. Lemongello, who plaintiff alleges falsely misrepresented themselves as medical doctors. Id. ¶ 33. At that meeting, the individuals discussed plans to establish a second office in Italy, in addition to the one in Naples which Salvatore Conte staffed, to be managed by someone named Lemongello. As with Salvatore Conte, Lemongello was to receive a $1,750 fee for each patient he referred to SIUH who was treated there. Id. ¶ 33. Plaintiff expressed her concern about the legitimacy and legality of this fee arrangement to Joseph Conte on numerous occasions. Id. ¶ 34.

Plaintiff continued to receive complaints from Italian patients and their families about the inadequacy of the treatment they were receiving and to report that information to Joseph Conte. He dismissed the complaints and told plaintiff, "You are not to be at their beck and call" and "What do they need, a babysitter?" Id. ¶ 36.

---

[2] Plaintiff alleges that the hospital did not hire an additional interpreter until mid-August when she took a two-week long vacation. Am. Compl. ¶ 31.

[3] The nature of Passeri's affiliation with the defendants is not clear from the complaint or the parties' memoranda of law.

In August 2002, plaintiff went to Joseph Conte's office, which he shared with Anthony Ferreri ("Ferreri"), Senior Vice President of Human Resources. While waiting for Conte, plaintiff told Elaine Burke ("Burke"), Ferreri's administrative assistant, about the Italian patients' complaints. Burke suggested that plaintiff speak to Passeri. Plaintiff later met with Passeri and told him about "the inadequate patient care" and that additional interpreters were needed. Id. ¶ 41. Passeri stated that he would like to establish an International Patient Program ("IPP"), of which plaintiff would be the director. In fact, while plaintiff was in the office, Passeri called Ferreri of Human Resources and told him as much. Id. ¶¶ 41-42. During the meeting, plaintiff also asked Passeri whether she could return to her position as Manager of Volunteer Services if the position with the IPP did not work out, and Passeri assured her that she could. Id. ¶ 43.

On August 20, 2002, plaintiff met with Ferreri about the new position with the IPP. In response to plaintiff's concerns about who would assume the position of Manager of Volunteer Services in plaintiff's stead, Ferreri indicated that the hospital was in the process of hiring someone. Id. ¶ 45. When plaintiff returned from a two-week vacation, Burke provided her with a job description for the new position as Director of the IPP, which plaintiff signed on August 30, 2002. In that position, Joseph Conte was plaintiff's immediate supervisor.

While in the new position, plaintiff continued to report concerns to the hospital administrators. For example, in September 2002, plaintiff told Joseph Conte that, while she was in Italy, Salvatore Conte told her that he was required to send pathology slides to SIUH for each prospective patient. Joseph Conte explained that two patients in the treatment program were erroneously treated because they never actually had cancer. Id.

¶ 51.  Plaintiff also complained to Joseph Conte on October 18, 2002 that "she was being treated more like a clerk than as a director" and that Burke had been acting as a director and undermining plaintiff's management of the IPP.  Plaintiff asked Conte why she was "being harassed by Elaine [Burke]" and he responded, "I didn't know we were harassing you."  Id. ¶ 52.

On October 25, 2002, Margaret D'Alto ("D'Alto"), Vice President of Human Resources, arranged a meeting with plaintiff.  D'Alto said she understood plaintiff had some concerns.  Plaintiff relayed her concerns about Burke's efforts to undermine plaintiff's authority, for example, by rescheduling IPP events for the weekends, which was inconvenient for plaintiff.  Id. ¶ 54.  Additionally, plaintiff showed D'Alto an event flyer that Joseph Conte sent to personnel in the Radiation Oncology Department, which indicated that people interested in attending should RSVP to Burke.  Id. ¶ 55.  D'Alto indicated plaintiff had some "legitimate concerns" and that she would investigate them.  Id. ¶ 56.  D'Alto also stated that Burke was "the point person" between Joseph Conte and plaintiff, and plaintiff responded that she was comfortable with that arrangement.  Plaintiff told D'Alto she was "merely asking for some clarification on the logistics of her department."  Id. ¶ 58.  Finally, D'Alto asked plaintiff to meet with her and Burke on October 30, 2002 to "clear up any misunderstandings."  Id. ¶ 59.

As planned, plaintiff went to D'Alto's office on October 30, but was informed that Burke would not be present at the meeting.  Instead, D'Alto's assistant, Marie, was present to take notes.  Id. ¶ 60.  D'Alto accused plaintiff of contacting Joseph Conte after plaintiff was told that Burke would be the "point person."  Plaintiff stated she was unaware that she was not permitted to call Conte.  D'Alto then told plaintiff that she was

5

terminated.  Plaintiff asked if she could return to her position as Manager of Volunteer

Services, but D'Alto said, "I don't think Joe [Conte] wants you around."  Id. ¶¶ 61-64.

When plaintiff asked what she had done wrong, D'Alto said only that plaintiff

"disobeyed orders" and that she should "pack up and leave."  Id. ¶ 65.  Plaintiff alleges

that throughout her employment with defendants she was "an exemplary employee."

In November, 2002, plaintiff contacted the New York State Labor Department

and was advised that she should have SIUH indicate in writing its reasons for

terminating plaintiff.  She contacted D'Alto and then Lamberti to request such a

document and stated that she had not had an exit interview or received any information

regarding her medical insurance or vacation pay.  In early December, D'Alto called

plaintiff and indicated she would "take care of" plaintiff's vacation pay, that someone

would contact plaintiff about her insurance coverage and that she would send a

termination letter to plaintiff shortly.  Id. ¶ 71.  Plaintiff asked D'Alto why she was

terminated and why the hospital did not follow its dismissal procedure, but received no

answer to her questions.  On December 10, 2002, SIUH sent plaintiff a termination

letter indicating that plaintiff was terminated because of "probationary failure."  Id. ¶ 73.

Plaintiff alleges that she was never informed that there was a probationary period for the

new position.  Id. ¶¶ 49, 74.

On January 15, 2003, Terry Booras ("Booras"), an SIUH Human Resources

employee, met with plaintiff.  Booras told plaintiff that she was "certainly eligible for

rehire," but that no positions were presently available.  Booras stated that she would

look for positions for plaintiff, but plaintiff never heard from Booras again.  Id. ¶¶ 77-79.

**Procedural Background**

Plaintiff filed her original complaint on March 15, 2004, in which she asserted eight causes of action for (1) violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"); (2) age discrimination in violation of New York Executive Law § 290 et seq.; (3) violation of the New York City Human Rights Law, § 8-107 et seq. of the Administrative Code of the City of New York; (4) retaliation pursuant to New York Labor Law § 740; (5) retaliation pursuant to New York Labor Law § 741; (6) violation of the Fair Labor Standards Act; (7) intentional infliction of emotional distress; and (8) breach of contract. She premised this Court's subject matter jurisdiction on 28 U.S.C. §§ 1331 and 1367.

Defendants moved to dismiss the original complaint by motion dated May 19, 2004. Plaintiff then filed an amended complaint on August 24, 2004 and omitted the causes of action for retaliation pursuant to New York Labor Law § 740, violation of the Fair Labor Standards Act and intentional infliction of emotional distress. Pending before the Court is defendants' motion to dismiss the remaining claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for attorney's fees under New York Labor Law § 740.

<u>**DISCUSSION**</u>

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court takes the facts as alleged in the complaint to be true, and must draw all reasonable inferences from those facts in favor of the plaintiff. See <u>Ortiz v. Cornetta</u>, 867 F.2d 146, 149 (2d Cir. 1989). "[M]otions to dismiss for [lack of] subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to

state a claim under Rule 12(b)(6)." Walker v. New York, 345 F. Supp. 2d 283, 286 (E.D.N.Y. 2004) (citations omitted).  A court must not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  With those principles in mind, the Court turns to the parties' arguments in this case.

## I.     Whistleblower Act, N.Y. Labor Law § 740

In her original complaint, plaintiff asserted a cause of action under N.Y. Labor Law § 740 ("§ 740" or "Whistleblower Act"), which, in relevant part, prohibits an employer from "tak[ing] any retaliatory personnel action against an employee because such employee ... (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety."  That section further states:

> Existing rights.  Nothing in this section shall be deemed to diminish the rights, privileges, remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract; except that the institution of any action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law.

§ 740(7) (emphasis added).  Defendants argue that this waiver provision precludes plaintiff from maintaining the causes of action in her amended complaint.  There is conflicting case law interpreting the reach of this waiver provision.  The parties rely on Collette v. St. Luke's Roosevelt Hospital, 132 F. Supp. 2d 256 (S.D.N.Y. 2001), in which plaintiff, an independent contractor working for the hospital's Continuing Medical Education program, made various complaints about defendant's hiring practices and its

violation of accreditation standards concerning receipt of donations from pharmaceutical companies. Plaintiff was ultimately terminated and brought an action asserting causes of action under New York's Whistleblower Act and the Fair Labor Standards Act. That action resulted in a stipulation of settlement between the parties. Thereafter, plaintiff filed a second action alleging wrongful retaliation in violation of Title VII, New York state and city anti-discrimination laws, disparate impact race discrimination under Title VII, state and city laws and breach of employment contract. In moving to dismiss the complaint, defendant argued that by asserting a Whistleblower Act claim plaintiff waived her other causes of action. Id. at 259-60.

The court began by analyzing the plain meaning of the statute's text. It rejected the broadest interpretation, namely, that once a plaintiff initiates a claim under § 740, all concurrent and future lawsuits by that employee are waived, because, among other reasons, that would chill whistleblowing and thwart the very purpose of the statute. Id. at 262-63. The court then determined the limitations of the Act. In the course of its opinion, the court rejected three possible limitations on the breadth of § 740: (1) that the waiver applies to all claims by the plaintiff against her employer; (2) that the waiver applies to all claims arising out of the parties' employment relationship; and (3) that the waiver applies to all claims arising out of the same course of conduct as the alleged retaliatory termination. Id. at 264-65. In rejecting the third "course of conduct" limitation, the court made clear that asserting a cause of action under § 740 does not act as a waiver of federal causes of action. "[A]n effort by New York to condition a state law right on the waiver of arguably unrelated federal rights would raise serious constitutional questions." Id. at 265 (emphasis in original). Moreover, the court

reasoned that applying the waiver to federal claims would preclude a plaintiff from alleging an invasion of interests distinct from those the Whistleblower Act was designed to protect.  Id. at 265-66 (distinguishing federal right not to be discriminated against from state law right not to be retaliated against for reporting a public health threat). The Court gleaned the purpose of the Act from its legislative history, including the statement in Governor Mario Cuomo's Executive Approval Memorandum on signing the Act:  "Encouraging employees to bring violations to the attention of their employers and shielding them from employer retaliation if they disclose wrongful conduct to authorities, will protect the welfare of the people of this State, promote enforcement of the law, and give needed protection to employees who wish to act as law-abiding citizens without fear of losing their jobs."  Id. at 271.  Based on this statement, the court held that interpreting the waiver to "require an election of remedies that protect the whistleblower," but not to extinguish "any rights [an employee] might have under independent causes of action … that may have arisen from the same course of employer conduct as the retaliatory firing," is consistent with the purpose of the Act which is to provide an incentive for employees to report violations of the law.  Id.

Finally, the court cited the practice commentary to the Act, which it concluded suggests that the waiver provision "is intended to avoid overlapping claims and duplicate recovery that might arise from an employer's retaliation for whistleblowing, rather than to require that a whistleblower plaintiff automatically waives rights to redress harms unrelated to whistleblowing."  Id. at 273.  The court's discussion of "overlapping claims and duplicate recovery" is illuminating:

'[I]f in retaliation for disclosing arguably unsafe as well as illegal crack sales by a

10

> welfare hotel management, an employee was shot, maimed and hence unable to
> work, and then denied health benefits, a § 740 claim for lost benefits should not
> operate to bar a suit for battery. The shooting would be independently illegal
> apart from its retaliatory character. The same reasoning can apply to less colorful
> situations where retaliation is not an element of the claim under a source of
> redress apart from § 740.' ... Similarly, it would follow that an African-American
> employee who is fired after reporting that his employer illegally concealed a toxic
> waste dump (activity protected under the Act), would not, upon instituting a
> whistleblower complaint, waive the separate claim that the employer had also
> discriminated against him by taking his race into account in deciding to fire him.

Id. at 273-74 (quoting practice commentary). Applying its interpretation of the Act, the

court held that plaintiff's discrimination claims were not barred as they were based on

facts distinguishable from the alleged retaliation giving rise to her whistleblowing claim.

Id. at 274.

Another instructive case is Nicholls v. Brookdale University Hospital Medical

Center, 2004 WL 1533831, at *1 (E.D.N.Y. July 9, 2004), which involved the allegations

of a physician assistant against her hospital employer and its agents for, inter alia, labor

law violations, race discrimination, and retaliation. As a union delegate, plaintiff

relayed complaints she received from employees to the hospital regarding the latter's

discriminatory practices. Id. Plaintiff was then accused of improperly signing patient

charts and ultimately terminated from employment. Id. She brought an action against

the hospital. In her complaint, she asserted a cause of action under § 740. Defendants

moved to dismiss the complaint pursuant to Rule 12(b)(6), and the court held that the §

740 claim was time-barred. With respect to the waiver provision in § 740(7), the court,

adopting the reasoning in Collette, held that the waiver applies "only to causes of action

that arise from the same course of conduct as the retaliatory action." Id. at *6. Thus,

the court dismissed plaintiff's state and city discrimination claims to the extent they

were based in part on alleged retaliation against plaintiff.  Id.  For the same reason, the court also dismissed plaintiff's claim for breach of contract pursuant to the collective bargaining agreement.  Id. at *7.  The court gave plaintiff leave to replead within thirty days to demonstrate that those causes of action did not arise from defendant's alleged retaliatory conduct.  In framing the waiver as applicable to claims based on the same "course of conduct" as the retaliatory discharge, Nicholls appears to adopt a broader interpretation of § 740(7) than did Collette; indeed, Collette rejected a "course of conduct" interpretation.  Nevertheless, the results reached in those cases assist in reconciling the courts' interpretation insofar as both courts focused on the interest allegedly invaded in analyzing the allegations underlying the whistleblower and discrimination claims.[4]

In Nadkarni v. North Shore Long Island Jewish Health System, No. 02-5872 (E.D.N.Y. 2003) (Seybert, J.), an unpublished decision which the parties here also cite, the plaintiff asserted claims for discrimination based on disability and retaliation for complaining about public health threats.  The court cited Collette, but, as in Nicholls, concluded that plaintiff, having asserted a cause of action for retaliatory termination under § 740, had waived all other claims because they were based on her allegations that she was terminated as "a result of her disability and in retaliation for her complaints regarding the welfare of Franklin's patients."  Id. at 12 (emphasis added).

Both parties also cite New York state case law.  Those cases apply the waiver

---

[4] Plaintiff urges this Court to limit the application of the waiver provision in § 740(7) to claims under N.Y. Labor Law.  The Court is persuaded to follow Collette in holding that the waiver "affect[s] only other rights and remedies relating to the kind of wrongful retaliation prohibited by the Act itself."  132 F. Supp. 2d at 260.

provision in § 740 even more broadly than the federal court decisions discussed above. For example, one court held that it "bars claims which arise out of the same facts as give rise to the claim brought under section 740(2)." Feinman v. Morgan Stanley Dean Witter, 193 Misc. 2d 496, 497 (N.Y. Sup. Ct. 2002) (ruling that plaintiff's age discrimination claim under state law was barred because it and the cause of action under § 740 were based on plaintiff's discharge from employment and denying plaintiff's motion to amend his complaint for the fourth time). See also Owitz v. Beth Israel Med. Ctr., 2004 WL 258087, at *3 (N.Y. Sup. Ct. Jan. 29, 2004) (holding that waiver applies to claims that "arise out of the same acts" as those underlying the § 740 claim "and/or that 'relate to' the retaliatory action(s)on which the § 740 claim is based" and dismissing discrimination claims alleging that plaintiff was terminated in retaliation for complaining about sexual harassment) (citations omitted); Rotwein v. Sunharbor Manor Residential Health Care Facility, 181 Misc. 2d 847, 853 (N.Y. Sup. Ct. 1999) ("a retaliatory discharge claim under Labor Law § 740 forecloses the assertion of any other claims or remedies relating to the discharge"); Gonzalez v. John T. Mather Memorial Hospital, 147 Misc. 2d 1082, 1083-84 (N.Y. Sup. Ct. 1990) (holding that "the commencement of an action under Labor Law § 740 precludes any other action by the same plaintiff under any other theory of liability," but permitting the plaintiff to rely on her amended complaint which omitted that claim).

The Court adopts the interpretation of the scope of the § 740(7) waiver in Collette and turns to the allegations in this case. In her § 740 cause of action, plaintiff alleged that on numerous occasions, she reported to SIUH and its agents "that patients were receiving improper inadequate treatment, and that some patients had received no

treatment at all." Am. Compl. ¶ 98.  Additionally, plaintiff reported that the patients were refused copies of their medical records and that the hospital did not obtain their informed consent in violation of N.Y. Public Health Law §§ 179 and 2800 et seq.  Those unlawful activities created a "substantial and specific danger to the public."  Plaintiff also complained about the fee arrangements between SIUH and the Italians who falsely represented themselves as medical doctors, which she alleged violated N.Y. Public Health Law §§ 2811 and 4800 et seq. and 47 C.F.R. § 1001.  She further alleged that she made those complaints in good faith and that they were truthful.  Id. ¶¶ 100-1.  Plaintiff was fired "in retaliation for reporting" those violations and sought reinstatement to her position as Director of the IPP, with full fringe benefits and seniority rights.  Id. ¶¶ 112, 116.  Additionally, she sought compensation for lost wages, including back and front pay, benefits, reasonable costs, disbursements and attorney's fees.  In addition to monetary damages totaling $1,000,000, plaintiff sought an injunction against defendant's unlawful conduct.  Id. ¶¶ 117-20.

Plaintiff's omission of the § 740 claim from her amended complaint does not immunize her claims from the waiver provision in § 740(7).  See Def. Mem. at 12. Nicholls held that "Plaintiff's claims based on conduct arising from defendants' retaliatory action cannot be revived merely because the collateral section 740 claims have been dismissed.  The language of section 740(7) is clear and leads to a harsh result but not an absurd one.  It clearly states that the waiver applies when a plaintiff has instituted an action under section 740(7)."  2004 WL 1533831, at *7 (emphasis in original).  Therefore, the court held that "having risked filing a time-barred whistleblower action," plaintiff's related claims were waived.  Id.  See also Gaughan v.

14

<u>Nelson</u>, 1997 WL 80549, at *2 (S.D.N.Y. Feb. 26, 1997) (holding "Plaintiff cannot erase his initial waiver by filing the Amended Complaint which omits the dismissed Labor Law § 740 claim. The filing of the Amended Complaint does not change the fact that Plaintiff's original complaint 'institut[ed]' a claim under the meaning of § 740(7)."); <u>McGrane v. Reader's Digest Ass'n, Inc.</u>, 1993 WL 525127, at *1 (S.D.N.Y. Dec. 13, 1993) ("The election required by the Labor Law provision is not revocable under state law."); <u>Feinman</u>, 193 Misc. 2d at 498 (claim under § 740 acted as a waiver with respect to discrimination claim, notwithstanding that it was dismissed as time-barred); <u>Rotwein</u>, 181 Misc. 2d at 854 (waiver triggered by the mere institution of an action containing a § 740 claim, so that "a discontinuance of or service of an amended complaint dropping the Labor Law § 740 claim would not invoke a fresh start, nullifying the initial waiver").

## II.     <u>N.Y. Labor Law § 741 Claim</u>

In her amended complaint, plaintiff asserts a claim under N.Y. Labor Law § 741, alleging that she was wrongfully terminated in retaliation for reporting to SIUH management that, <u>inter alia</u>, patients were receiving inadequate care in violation of the public health laws of New York.[5]  <u>See</u> Am. Compl. Count IV.  As with § 740, § 741 prohibits employers from retaliating against whistleblowers.  Unlike § 740, however, § 741 applies specifically to health care employees.  Under the ruling of <u>Collette</u>, plaintiff waived this claim when she asserted a claim for retaliatory termination under § 740 in

---

[5] Section 741(2) states as follows: "Retaliatory action prohibited.  Notwithstanding any other provision of law, no employer shall take retaliatory action against any employee because the employee does any of the following:  (a) discloses or threatens to disclose to a supervisor, or to a public body an activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care; or (b) objects to, or refuses to participate in any activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care."

her original complaint.  See 132 F. Supp. 2d at 274 (waiver provision applies to "rights and remedies concerning whistleblowing").[6]  See also Berde v. North-Shore Long Island Jewish Health System, Inc., No. 015320-04, at 7 (N.Y. Sup. Ct. Feb. 4, 2005) (the § 740(7) waiver bars claims asserted under § 741 arising from the same acts); Nadkarni v. North-Shore Long Island Jewish Health System, Inc., No. 13796-03, at 3 (N.Y. Sup. Ct. Mar. 17, 2004) (noting one ground for dismissal of § 741 claim is the waiver under § 740(7) as to all other claims based on the same events).  Accordingly, this claim is dismissed.[7]

III.    **Age Discrimination Claims**

Plaintiff asserts claims for age discrimination under the ADEA, the New York Executive Law § 290 et seq. and the New York City Human Rights Law, § 8-107 et seq. of the Administrative Code of the City of New York.  See Am. Compl. Counts I, II, III. These causes of action allege that plaintiff was born on May 12, 1949 and, at the time of her termination, was 53 years old and part of a protected class.  Defendants' discharge of plaintiff because of "probationary failure" was pretextual and constituted a violation of

_____

[6] Plaintiff asserts correctly that § 741 was enacted subsequent to the decision in Collette.  She also argues that it is unlikely that under Collette the waiver provision in § 740 would preclude a concurrent or future claim under § 741.  Pl. Opp. at 15.  The Court rejects this contention as it is difficult to imagine a cause of action that more substantially overlaps with and is duplicative of the protection of whistleblowing activity under § 740.

[7] Even aside from plaintiff having waived her claim under § 741, she fails to state a claim under that section because it does not apply to her.  Section 741(1)(a) defines "employee" as "any person who performs health care services for and under the control and direction of any public or private employer...." That provision applies to health care workers.  See Horn v. New York Times, 100 N.Y.2d 85, 97 n.4 (2003); Berde, No. 015320-04, at 6.  There are no allegations in the complaint that plaintiff "performed health care services" while employed by SIUH or was a health care employee.  Instead, the complaint alleges that she acted as an interpreter and that she held the positions of Coordinator and Manager of Volunteer Services and later Director of the IPP.  Defendants concede that plaintiff was a non-medical employer.  See Def. Mem. at 3 ("Plaintiff does not claim to have had any medical or clinical training nor does she allege any involvement in direct patient care.  Plaintiff clearly was in no position to make medical judgments concerning any patient's cancer treatment.").

16

the ADEA. Plaintiff also alleges that SIUH replaced her as Director of the IPP with an employee who was approximately thirty years old. Finally, SIUH failed to "honor the agreement that Plaintiff would be restored to her former position as Director of Volunteer Services" and filled that position with an employee who was twenty-five years old. Id. ¶¶ 81-88.

With respect to the effect of the waiver under § 740(7) on federal claims, defendants argue that plaintiff is precluded from pursuing her ADEA claim. Def. Mem. at 11. Nevertheless, the Court is persuaded by the determination in Collette that a cause of action under § 740 does not act as a waiver of federal causes of action because "an effort by New York to condition a state law right on the waiver of arguably unrelated federal rights would raise serious constitutional questions." 132 F. Supp. 2d at 265 (emphasis in original). See also Nicholls, 2004 WL 1533831, at *6 ("Holding that the waiver does not apply to claims under federal law, avoids serious federal constitutional problems, which would be raised were a state statute to nullify a federal provision."). [8] Therefore, the Court denies defendants' motion to dismiss plaintiff's ADEA claim. [9]

The waiver provision of § 740(7) may, however, apply to plaintiff's state and city law discrimination claims because federalism concerns are not implicated. In Collette,

---

[8] Some courts have held that federal claims are waived. For example, in Nadkarni, the court held that plaintiff's ADA claim was waived because she also asserted a claim under the Whistleblower Act. No. 02-5872, at 12-13. The Court is persuaded by the rationale in Collette and Nicholls that federal claims are not waived by § 740. Moreover, the Court is not compelled to conclude otherwise by defendants' citation to cases in which courts have upheld contractual waivers of federal employment discrimination claims. See Def. Mem. at 11. The application of employees' contractual release agreements to Title VII claims against employers does not implicate the same federalism concerns as does construing a state law to bar concurrent or future litigation of a federal cause of action.

[9] Because the Court denies the motion to dismiss plaintiff's ADEA claim, it exercises subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1367.

plaintiff alleged that "she was denied a promotion, treated in a hostile manner, and discharged for retaliation" for complaining about defendant's discriminatory employment practices.  By contrast, her whistleblower claim alleged "retaliation exclusively on account of her reporting unlawful financial contributions to an accrediting body for medical education programs.  The court held that "differentiated facts" underlay plaintiff's discrimination claims, and thus they were not barred.  132 F. Supp. 2d at 274.  Here, plaintiff's  state and city law discrimination causes of action are not based on alleged retaliation.  Instead, plaintiff alleges that she was fired based on the pretext of "probationary failure" according to SIUH's termination letter.  Am. Compl. ¶ 73.  As in Collette, plaintiff's whistleblowing and discrimination claims are based on different facts.  Significantly, because plaintiff's age discrimination claims are not predicated on allegations of retaliation, those and her whistleblowing claims are even more distinct than the ones at issue in Collette.  See also Nicholls, 2004 WL 1533831, at *6 (holding plaintiff failed to plead "purposeful discrimination" or "hostile work environment" in asserting her discrimination claims and granting plaintiff leave to replead those claims without reference to the alleged retaliation).[10]  Accordingly, the Court denies defendants' motion to dismiss plaintiff's state and city law discrimination claims.

IV.    **Defendants' Request for Attorney's Fees**

Defendants move this Court for an order granting them attorney's fees under § 740(6), which provides:  "A court, in its discretion, may also order that reasonable

---

[10]  Defendants do not dispute the sufficiency of plaintiff's age discrimination claims, and thus the Court's analysis of plaintiff's discrimination claims pursuant to Rule 12(b)(6) is limited to whether they are waived by virtue of § 740.

attorneys' fees and court costs and disbursements be awarded to an employer if the court determines that an action brought by an employee under this section was without basis in law or in fact." They argue that plaintiff's claim under § 740 was without basis in law or fact because, since she filed her original complaint more than one year after her termination, the claim was time-barred. <u>See</u> Def. Mem. at 16-17. Defendants rely on <u>Rotwein</u> to support their argument for attorney's fees. That court analyzed the sufficiency of plaintiff's § 740 claim and held that plaintiff failed to allege that he was an "employee" under the Act, that there was an actual violation of law, rule or regulation about which plaintiff complained and, assuming a violation, that it presented a substantial and specific danger to the public health and safety. 181 Misc. 2d at 852. Finding that plaintiff's claim was without merit, the court exercised its discretion under § 740(6) to award defendants attorney's fees, costs and disbursements. In reaching its decision, the court considered that the plaintiff earlier attempted to withdraw the § 740 claim by discontinuance (which was ineffective under state law in the absence of a court order or stipulation) and that the action had been pending for more than a year at that time. <u>Id.</u> at 853. The court viewed plaintiff's attempt to withdraw the whistleblower claim as an effort to avoid the waiver pursuant to § 740(7) and preserve his other claims. <u>Id.</u> at 853, 855. Moreover, defendants in <u>Rotwein</u> had answered the complaint, discovery had been conducted relating to the retaliatory discharge and the litigation had progressed to the summary judgment stage. <u>Id.</u>

Unlike in <u>Rotwein</u>, plaintiff in this case served her amended complaint before defendants filed an answer to the original complaint containing the § 740 claim. <u>See</u> Pl. Opp. at 26. Moreover, there has been no discovery conducted in this litigation to date.

Accordingly, the Court denies defendants' request for attorney's fees. <u>See</u> <u>Majer v. Metro. Transp. Auth.</u>, 1990 WL 212928, at *9 (S.D.N.Y. Dec. 14, 1990) (denying request for attorney's fees pursuant to § 740(6) without prejudice pending discovery as to the nature of plaintiff's claim); <u>Feinman</u>, 193 Misc. 2d at 499 (denying defendant's motion for attorney's fees as a matter of discretion).

## V.     <u>Breach of Contract Claim</u>

Plaintiff asserts a claim for breach of contract alleging that in August 2002, Passeri told plaintiff that he was interested in starting the IPP with plaintiff as head of that program. <u>See</u> Am. Compl. Count V. Plaintiff accepted the new position in reliance on representations by Passeri and Ferreri that "her old position as Manager of Volunteer Services would always be available to her should things not work out for her with the" IPP. Am. Compl. ¶ 112. Plaintiff alleges that defendants breached their contract with plaintiff by "summarily firing her without the opportunity to return to her former position, and by failing to follow the termination procedures set forth in the [SIUH] Employee Handbook" and that as a result she suffered economic damage. <u>Id.</u> ¶¶ 113-14.

In moving to dismiss plaintiff's claim, defendants argue that plaintiff was an at-will employee, that there was no employment contract between the parties and that the employment relationship was terminable by either party at any point. Def. Mem. at 17. They rely on <u>De Petris v. Union Settlement Ass'n, Inc.</u>, 86 N.Y.2d 406, 410 (1995), in which the court affirmed the dismissal of plaintiff's Article 78 proceeding for reinstatement based on allegations that he was wrongfully terminated and that defendant corporation violated its termination procedures. In the course of its opinion, the court stated that "absent an agreement establishing a fixed duration, an employment

relationship is presumed to be a hiring at will, terminable at any time by either party."
Id.  An employee may recover for wrongful discharge, however, where he establishes
that the employer made him aware of "its express written policy limiting its right of
discharge and that the employee detrimentally relied on that policy in accepting the
employment."  Id.  The court also cautioned that the "mere existence of a written policy
… does not limit an employer's right to discharge an at-will employee or give rise to a
legally enforceable claim by the employee against the employer."  Id.  Plaintiff here does
not sufficiently allege an employment agreement between her and defendants.
Moreover, she fails to allege that she was aware of and relied on an express written
policy limiting SIUH's right to terminate her in accepting employment at the hospital.
Plaintiff's allegations with regard to the SIUH employee handbook, which she alleges
contained termination procedures that SIUH violated, are inadequate to overcome the
presumption of at-will employment.

 With respect to the allegations that plaintiff relied on representations by Passeri
and Ferreri that she could return to her position as Manager of Volunteer Services,
courts hold that oral assertions do not support a claim for breach of an implied contract.
For example, in Albert v. Loksen, 239 F.3d 256, 264 (2d Cir. 2001), the plaintiff asserted
a cause of action for breach of implied contract alleging that, although he had no written
employment agreement with his employer, oral representations made to him during an
orientation meeting and on postings in the workplace on which he relied gave rise to an
implied employment contract.  The Court rejected the argument and, finding no other
evidence of an employment contract between the parties, granted summary judgment in
favor of defendant.  Id. at 265.  In Albert, the Second Circuit cited Fitzgerald v. Martin-

21

Marietta, 256 A.D.2d 959 (1998), which is factually analogous to this case.  In 1977,

plaintiff was employed by defendant as an hourly utility worker and, in 1986, he was

offered a new, nonunion position within the corporation.  Plaintiff was reluctant to

accept the position because of the security of his existing position, but, after relying on

verbal assurances from his superiors "that he would be treated fairly, in accordance with

the policies" in the employee handbook, he accepted the new position.  Id. at 959-60.

Plaintiff was ultimately terminated and thereafter brought an action for breach of

contract premised on the representations of the handbook and the oral statements of his

superiors.  The court deemed plaintiff an at-will employee because he lacked a fixed

duration employment agreement, and held that plaintiff failed to rebut the presumption

against the employer's right to discharge its employees by alleging the elements of

wrongful discharge in De Petris.  See discussion supra.  Moreover, it rejected the

contention that the statements in the handbook and those by plaintiff's superiors

created an implied employment contract between the parties and affirmed the decision

granting summary judgment in favor of defendant.  Id. at 960.

Albert and Fitzgerald counsel the Court to conclude that plaintiff's allegations of

representations by Passeri and Ferreri are insufficient to establish the existence of an

employment contract between the parties.  In the absence of allegations sufficient to

show the existence of an employment agreement, the Court presumes plaintiff was an

at-will employee and her claim for breach of contract is dismissed.[11]  See Ullmann v.

---

[11] In opposition to defendants' motion, plaintiff relies on Rooney v. Tyson, 91 N.Y.2d 685, 688
(1998), which concerned whether oral representations that plaintiff would be boxer Mike Tyson's trainer
"for as long as [Tyson] fought professionally" established a definite duration employment agreement
sufficient to overcome the presumption of at-will employment.  Rooney is inapposite given that this case
does not concern and plaintiff does not allege a contract of fixed duration.

Norma Kamali, Inc., 207 A.D.2d 691, 692 (1st Dep't 1994) (dismissing breach of contract claim where plaintiff was at-will employee and allegations of oral assurances of employment were insufficient to overcome presumption that employment was freely terminable).[12]

## VI.    Whether Health System Was Plaintiff's Employer

Defendants argue that plaintiff has failed to allege that Health System is her "employer" and therefore she fails to state a claim against that defendant under the various anti-discrimination statutes asserted in the complaint and N.Y. Labor Law § 741.[13]  See Def. Mem. at 18-20.  In this regard, the Court finds instructive Da Silva v. Kinsho International Corp., 229 F.3d 358, 360 (2d Cir. 2000), in which the Second Circuit considered whether a plaintiff's failure to allege that a defendant has the requisite number of employees so that it is an "employer" under Title VII deprives a federal court of subject matter jurisdiction or whether that infirmity in the complaint concerns the merits of the case.[14]  Specifically, that case concerned whether a parent

---

[12]  Defendants also argue that insofar as the breach of contract claim relates to the whistleblowing claim, it is waived pursuant to § 740(7).  See Def. Mem. at 11.  While there is support for this proposition, see Rotwein, 181 Misc. 2d at 856 (holding that breach of contract causes of action alleging that defendant failed to follow termination procedures were waived by plaintiff's institution of a § 740 claim because they were related to the propriety of the discharge), under the ruling of Collette, 132 F. Supp. 2d at 273, the Court declines to hold that plaintiff's breach of contract claim is waived because her contract allegations are distinct from those concerning retaliatory discharge for whistleblowing.

[13]  Defendants note that in her amended complaint, plaintiff asserts that this action arises under Title VII and that defendants are her "employers" within the meaning of that statute, see Am. Compl. ¶¶ 1, 7, 8, but does not assert a cause of action under Title VII.  Therefore, they do not address liability under that statute.  Def. Mem. at 2.

[14]  Notwithstanding that it concerned Title VII, the analysis in Da Silva is pertinent here.  Because the definition of "employer" under Title VII mirrors that under the ADEA, courts apply arguments regarding liability under the statutes interchangeably.  See, e.g., Storr v. Anderson Sch., 919 F. Supp. 144, 146 n.1 (S.D.N.Y. 1996).  Furthermore, the analysis is similar of claims under New York anti-discrimination and Title VII.  See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 479 (1982).

company and its subsidiary were a single employer for purposes of the statute so that the employees of the parent company should be counted as the subsidiary's. Id. Significantly, the Court stated that plaintiff "endeavored to plead that an employer covered by Title VII has violated its prohibition" and that plaintiff's "failure to prove single employer status is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state [a] claim; it is a ground for defeating her federal claim on the merits." Id. at 365. See also Fernandez v. M&L Milevoi Mgmt., Inc., 357 F. Supp. 2d 644, 647 (E.D.N.Y. 2005) (Glasser, J.) (citing Da Silva and denying defendants' motion to dismiss for lack of subject matter jurisdiction because plaintiff sufficiently alleged defendant entity was his employer). Here, too, plaintiff has alleged that Health System was her "employer" as that term is defined in Title VII and the other anti-discrimination statutes she invokes. The Court finds that plaintiff's allegations are sufficient to provide Health System with notice of the claims against it. Accordingly, defendants' motion to dismiss plaintiff's claims against Health System is denied.

## CONCLUSION

For the reasons stated above, the Court (1) dismisses plaintiff's claim for retaliation under N.Y. Labor Law § 741 (Count IV); (2) denies defendants' motion to dismiss plaintiff's discrimination claims (Counts I, II, and III); (3) denies defendants' request for attorney's fees pursuant to § 740(6); (4) dismisses plaintiff's claim for breach

of contract (Count V); and (5) denies defendants' motion to dismiss plaintiff's claims against Health System.

SO ORDERED.

Dated: June 21, 2005
      Brooklyn, New York


s/_____
I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:


David O. Simon
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177-1211
Attorneys for Defendants


Jonathan B. Behrins
Behrins & Behrins, P.C.
One Edgewater Plaza
Suite 700
Staten Island, NY 10305
Attorneys for Plaintiff